FRANCES SEGRETO *v.* CITY OF BRISTOL
(AC 22081)

Foti, Mihalakos and Flynn, Js.

Argued May 6—officially released August 27, 2002

Donald R. Holtman, for the appellant (plaintiff).

Daniel C. DeMerchant, for the appellee (defendant).

*Opinion*

FLYNN, J. In this negligence action, the plaintiff, Frances Segreto, appeals from the judgment of the trial court rendered following the granting of the motion for summary judgment filed by the defendant city of Bristol (city) on its special defense of governmental immunity. The sole issue on appeal is whether the trial court properly determined that the city was entitled to judgment as a matter of law because the plaintiff's complaint alleged that the city negligently had performed a discretionary act, rather than a ministerial act, and the city was, therefore, immune from liability pursuant to General Statutes § 52-557n (a) (2) (B). We answer that question in the affirmative and affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff filed a one count complaint against the city, alleging that she had sustained injuries in a fall on a stairway located on the premises of a senior center that was owned and operated by the city.[1] She further alleged that her fall and resulting injuries were due to the negligence of the city or its employees.

___

[1] The plaintiff did not expressly state in her complaint that this action was brought pursuant to General Statutes § 52-557n, which abrogates a municipality's governmental immunity for certain acts of negligence. The trial court, nonetheless, treated the claim as one brought under that section after concluding that although the plaintiff did not expressly invoke that statutory provision, the city was "sufficiently apprised of the nature of the action" such that the complaint did not run afoul of Practice Book § 10-3 (a), which requires the pleader to identify by number the statute relied upon. See *Colon* v. *Board of Education*, 60 Conn. App. 178, 188 n.4, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000).

The city filed an answer, denying that it was negligent in any of the ways alleged by the plaintiff, and three special defenses,[2] one of which was that the plaintiff's claim was barred by the doctrine of governmental immunity both at common law and pursuant to § 52-557n.[3] Thereafter, the city filed a motion for summary

[2] In total, the city filed three special defenses alleging (1) that the plaintiff's complaint failed to state a claim on which relief could be granted because her sole remedy was the highway defect statute, General Statutes § 13a-149, (2) that the plaintiff's complaint was barred by the doctrine of governmental immunity and (3) that the plaintiff's injuries were caused by her own negligence. Only the second special defense is at issue here.

[3] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

"(b) Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from: (1) The condition of natural land or unimproved property; (2) the condition of a reservoir, dam, canal, conduit, drain or similar structure when used by a person in a manner which is not reasonably foreseeable; (3) the temporary condition of a road or bridge which results from weather, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (4) the condition of an unpaved road, trail or footpath, the purpose of which is to provide access to a recreational or scenic area, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (5) the initiation of a judicial or administrative proceeding, provided that such action is not determined to have been commenced or prosecuted without probable cause or with a malicious intent to vex or trouble, as provided in section 52-568; (6) the act

judgment claiming that it was entitled to judgment as a matter of law on its special defense of governmental immunity. Along with its motion for summary judgment, the city submitted the affidavit of Steven Rybczyk, the city's claims and loss coordinator, who attested that although the city was responsible for the inspection, maintenance and repair of the stairway, it did not have a policy or procedure in place for maintaining, inspecting or repairing the stairway, except for snow and ice removal. The court granted the city's motion for summary judgment on the ground of governmental immunity after concluding as a matter of law that the plaintiff's complaint alleged that the city negligently had performed a discretionary act, rather than a ministerial act, and that her claim did not fit within the identifiable person-imminent harm exception to the qualified immunity from liability that a city enjoys for the discretionary acts of its employees.[4] This appeal followed.

or omission of someone other than an employee, officer or agent of the political subdivision; (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety; (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances; (9) failure to detect or prevent pollution of the environment, including groundwater, watercourses and wells, by individuals or entities other than the political subdivision; or (10) conditions on land sold or transferred to the political subdivision by the state when such conditions existed at the time the land was sold or transferred to the political subdivision."

[4] In her reply brief, the plaintiff raised for the first time the claim that the trial court improperly had determined that her claim did not fall within the identifiable person-imminent harm exception. This court granted the city's motion to strike that claim. "It is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Kelley* v. *Tomas*, 66 Conn. App. 146, 163, 783 A.2d 1226 (2001).

Before we turn to the issue raised by the plaintiff in this appeal, we first set forth the applicable standard of review. "[W]e note that [t]he standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Elliott* v. *Waterbury*, 245 Conn. 385, 391, 715 A.2d 27 (1998). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 24, 727 A.2d 204 (1999).

"The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *New Haven Savings Bank* v. *LaPlace*, 66 Conn. App. 1, 6, 783 A.2d 1174, cert. denied, 258 Conn. 942, 786 A.2d 426 (2001). Because the court in the present case rendered judgment for the city as a matter of law after finding that the complaint alleged that the city had negligently

failed to perform a discretionary function, our review is plenary.

We now turn to the merits of the plaintiff's claim that the court improperly determined that because her complaint alleged that the city negligently had failed to perform a discretionary act, the city was immune from liability pursuant to § 52-557n (a) (2) (B). She argues that the city's failure to maintain its premises in a reasonably safe condition, as a matter of law,[5] constitutes the failure to perform a ministerial function and, therefore, that the city was liable pursuant to § 52-557n (a) (1) (A) for injuries resulting from its failure to do so. She further argues that although the decision to devote public property to recreational use is discretionary in nature, the duty to maintain the property so devoted in a reasonably safe condition is always ministerial. We disagree.

"A municipality itself was generally immune from liability for its tortious acts at common law . . . . *Gordon* v. *Bridgeport Housing Authority*, [208 Conn. 161, 165, 544 A.2d 1185 (1988)]. Governmental immunity may, however, be abrogated by statute. The state legislature possesses the authority to abrogate any governmental immunity that the common law gives to municipalities. *Ryszkiewicz* v. *New Britain*, 193 Conn. 589, 593, 479 A.2d 793 (1984). The general rule developed in the case law is that a municipality is immune from liability unless the legislature has enacted a statute abrogating that immunity. *Williams* v. *New Haven*, [243 Conn. 763, 766–67, 707 A.2d 1251 (1998)]. Statutes that abrogate or modify governmental immunity are to be strictly construed. . . . This rule of construction stems from the basic principle that when a statute is in deroga-

---

[5] The plaintiff's original argument was that a municipality's duty to maintain its property is ministerial as a matter of law. In her reply brief, however, she argues for the first time that the determination as to whether an act is discretionary or ministerial is a question of fact.

tion of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of construction. . . . *Rawling* v. *New Haven*, 206 Conn. 100, 105, 537 A.2d 439 (1988). The court is to go no faster and no further than the legislature has gone. . . . A legislative intention not expressed in some appropriate manner has no legal existence. *Edmundson* v. *Rivera*, 169 Conn. 630, 633, 363 A.2d 1031 (1975). . . . The legislature . . . has set forth general principles of municipal liability and immunity in General Statutes § 52-557n. *Williams* v. *New Haven*, [supra, 767].

"Section 52-557n abrogates the common-law rule of governmental immunity and sets forth the circumstances in which a municipality is liable for damages to person and property. These circumstances include the negligent acts or omissions of the political subdivision or its employees or agents, negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit and acts which constitute the creation or participation in the creation of a nuisance. General Statutes § 52-557n (a). The section goes on to exclude liability for acts or omissions of any employee or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct and negligent acts that involve the exercise of judgment or discretion. General Statutes § 52-557n (a). The statute further sets forth ten other circumstances in which a municipality shall not be liable for damages to person or property. General Statutes § 52-557n (b)." (Internal quotation marks omitted.) *Tryon* v. *North Branford*, 58 Conn. App. 702, 720–21, 755 A.2d 317 (2000).

"While [a] municipality itself was generally immune from liability for its tortious acts at common law . . . its employees faced the same personal tort liability as

private individuals. . . . [Under § 52-557n, however, like the municipality itself, a] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." (Citations omitted; internal quotation marks omitted.) *Colon* v. *Board of Education*, 60 Conn. App. 178, 180, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000). "The hallmark of a discretionary act is that it requires the exercise of judgment. On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." (Internal quotation marks omitted.) Id., 181.

Although the plaintiff relies on § 52-557n as the statutory source abrogating the city's governmental immunity, she cites no language within that statute that may be fairly interpreted to stand for the proposition that a municipality's failure to maintain its property in a reasonably safe condition is, as a matter of law, ministerial, and our review of the text of that statute reveals no such language. We refuse to read a provision into the statute that the legislature itself has not expressed.

Nor does the plaintiff cite any case law interpreting § 52-557n that supports her position. She cites our Supreme Court's decision in *Elliott* v. *Waterbury*, supra, 245 Conn. 385, and this court's decision in *Salaman* v. *Waterbury*, 44 Conn. App. 211, 687 A.2d 1318 (1997), rev'd, 246 Conn. 298, 717 A.2d 161 (1998), and claims that those cases demonstrate that whenever a municipality acts as a landowner, the failure to maintain its property is the failure of a ministerial duty. We conclude that neither of those cases supports the position advanced by the plaintiff.

In *Elliott* v. *Waterbury*, supra, 245 Conn. 385, the plaintiff administratrix sought to recover from, inter

alia, the city of Waterbury for the death of her decedent who had been shot and killed by a hunter while jogging on reservoir land that was owned by the city but located in another town. Id., 389. The trial court rendered summary judgment in favor of the city on the ground of governmental immunity and the plaintiff appealed. Id., 409. The plaintiff argued that the alleged conduct of Waterbury did not constitute governmental acts entitled to immunity because it concerned a proprietary, as opposed to a public activity, namely, the operation of a water utility. Id., 412–13. Our Supreme Court explained that Waterbury's allegedly tortious conduct, namely, its decision to open the watershed land to hunting and the manner in which it regulated that activity, was unconnected to its operation of a water utility and that it was apparent that that activity consisted of a set of policy decisions concerning the use of city land for recreational purposes, which the plaintiff conceded required the exercise of judgment and discretion. Id., 413–14. Our Supreme Court noted that there was no indication that Waterbury had received any corporate gain or benefit from allowing hunting on its property. Id., 414. Accordingly, it concluded that, as a matter of law, the conduct of which the plaintiff complained constituted governmental, and not proprietary, acts, which were discretionary in nature and protected by governmental immunity. Id.

We fail to see how the court's determination in *Elliott*, that the city's conduct in opening its land for recreational purposes and the manner in which it chose to regulate that activity was discretionary and protected by governmental immunity supports the plaintiff's conclusion that when a municipality acts as a landowner, the manner in which it maintains its property concerns a ministerial duty.

The plaintiff also relies on *Salaman* v. *Waterbury*, supra, 44 Conn. App. 211. In *Salaman*, the plaintiff,

the administrator of the decedent's estate, relied on premises liability as one of his theories of negligence against the city of Waterbury, claiming that the city was liable for the decedent's drowning in a city owned reservoir. Id., 212–13. At the close of trial, the court instructed the jury on the applicable principles of premises liability. Id., 213. In its charge, the court explained that if the jury found that the plaintiff's decedent was a licensee, then the city owed him a duty of care. Id., 213–14. The jury returned a verdict in favor of the plaintiff, and the court granted the city's motion to set aside the verdict and for judgment notwithstanding the verdict after concluding that the evidence was insufficient to impose liability on the city even if the jury had concluded that the plaintiff's decedent was a licensee. Id., 214. This court reversed the judgment of the trial court, concluding that it was improper for the court to set aside the verdict because the evidence was sufficient to establish that the city had constructive knowledge of the decedent's presence on its property and, consequently, that he was a licensee. Id., 217–18. The plaintiff asserts that this court's holding in *Salaman* "affirms the correctness of the trial court's instructions regarding the duty owed to trespassers and licensees in terms of the traditional duties owed by any landowner to such persons [and] [n]ever once does it assert that the municipality might have enjoyed some sort of governmental immunity."

The plaintiff concedes in her brief, however, that in *Salaman* the city did not plead governmental immunity as an affirmative defense. Accordingly, this court did not even consider the question of whether the city's duty to maintain its property in a reasonably safe condition was a ministerial act. Thus, *Salaman* provides no guidance on the question of whether the duty was ministerial. "It is the general rule that a case resolves only those issues explicitly decided in the case." (Internal

quotation marks omitted.) *State* v. *Salmon*, 250 Conn. 147, 161, 735 A.2d 333 (1999). In her brief, the plaintiff makes a bare conclusory statement, without providing any factual support for her argument, that, in *Salaman*, the failure on the part of counsel to plead governmental immunity as a special defense was not an oversight but an acknowledgement that governmental immunity did not apply where premises liability had been alleged against the city. We can only speculate as to why counsel did not affirmatively plead governmental immunity as a special defense. We refuse to engage in such speculation.

Contrary to the plaintiff's argument, we conclude that the relevant case law on governmental immunity does not demonstrate that a municipality's failure to maintain its property in a reasonably safe condition is, as a matter of law, a ministerial function. Instead, we conclude that the case law demonstrates that the determination as to whether governmental immunity may successfully be invoked by a municipality to prevent liability for failure to maintain its property turns not on the plaintiff's theory of negligence but, rather, on the character of the act or omission complained of in the complaint. See *Elliott* v. *Waterbury*, supra, 245 Conn. 413–14 (summary judgment properly granted on city's special defense of governmental immunity where alleged conduct consisted of set of policy decisions concerning use of land for recreational purposes, which required exercise of judgment and discretion); *Evon* v. *Andrews*, 211 Conn. 501, 506–507, 559 A.2d 1131 (1989) (city's motion to strike properly granted where complaint alleged that city failed to act "reasonably," which necessarily requires exercise of discretion and judgment); *Beach* v. *Regional School District Number 13*, 42 Conn. App. 542, 553–54, 682 A.2d 118 (verdict in favor of defendant school district supervisor proper where plaintiff cafeteria worker failed to prove supervisor had some proce-

dure in place regarding removal of ice, snow so as to make supervisor's duty ministerial), cert. denied, 239 Conn. 939, 684 A.2d 710 (1996). "The duty . . . will be governmental [and therefore discretionary] if the nature and character of act or function be such." *Hannon* v. *Waterbury*, 106 Conn. 13, 17, 136 A. 876 (1927). And although the general rule is that a determination as to whether the actions or omissions of a municipality are discretionary or ministerial is a question of fact for the jury, "there are cases where it is apparent from the complaint. See *Evon* v. *Andrews*, supra, [505–507]. . . . *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 628, 749 A.2d 630 (2000)." (Internal quotation marks omitted.) *Colon* v. *Board of Education*, supra, 60 Conn. App. 181–82.

In the present case, the court relied on *Colon* v. *Board of Education*, supra, 60 Conn. App. 178, in determining that it was apparent from the plaintiff's complaint that the negligent acts of the city alleged in the complaint were discretionary in nature, rather than ministerial, because the complaint contained no allegation that the city or its employees were required to design or maintain the stairway where the plaintiff fell in a prescribed manner and failed to do so. In *Colon*, the plaintiffs sought to recover from the defendant board of education after the plaintiff student was struck by a door that allegedly was negligently opened by a teacher at her school. Id., 179–80. The complaint simply alleged that the teacher had acted negligently and that the defendant was liable for the negligence of its employees. Id., 180. The defendant raised a special defense of governmental immunity and then moved for summary judgment on that special defense. Id. The trial court rendered a summary judgment in favor of the defendant. Id. It held that the teacher's action in opening the door was discretionary rather than ministerial and, therefore, the defendant was not liable unless the action fell within an

exception to the rule that employees of a municipality are not be liable for their discretionary acts. Id. On appeal, the plaintiffs claimed that the trial court improperly determined that the teacher's actions were discretionary rather than ministerial. Id., 181. This court disagreed. We explained that "[a]lthough the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint." (Citation omitted; internal quotation marks omitted.) Id., 181, citing *Evon* v. *Andrews*, supra, 211 Conn. 505–507. We stated that because the plaintiffs' complaint contained no allegation that the teacher was required to perform, i.e., open the door, in a prescribed manner and failed to do so, it was apparent from the complaint that the plaintiffs had not alleged that the teacher was performing a ministerial duty. *Colon* v. *Board of Education*, supra, 182–83.

Even stronger, in *Evon* v. *Andrews*, supra, 211 Conn. 501, the plaintiffs sought damages for the wrongful deaths of their decedents who were killed when fire destroyed their apartment. Id., 502. The trial court granted the motion of the defendant city and various of its officials to strike the count of the complaint alleging that they had been negligent in failing to take remedial action against the property's owners to enforce various statutes, regulations and codes concerning the maintenance of the dwellings. Id., 503–504. Specifically, they had alleged in their complaint that the city and its officers had been negligent in failing to make reasonable and proper inspections of the premises. Id., 506. Our Supreme Court explained that "what constitutes a reasonable, proper or adequate inspection involves the exercise of judgment. . . . It is axiomatic that ministerial acts [are those that] are performed in a prescribed manner without the exercise of judgment. . . . Since the acts alleged . . . required in some measure the

exercise of judgment by a municipal employee . . . they were not ministerial and therefore the defendants were immune from liability." (Citations omitted; internal quotation marks omitted.) Id., 506–507.

The allegations of negligence set forth in the complaint in the present case are very similar to those in *Colon* and *Evon*. Here, the plaintiff alleged as follows: "The Plaintiff's fall and her consequent injuries were proximately caused by the negligence of the Defendant . . . in one or more of the following respects: a. They failed to maintain the exit door and stairway in a *reasonably* safe condition for persons using the same; b. They allowed the exterior stairway to consist of single step-downs or risers in conjunction with sets of multiple risers; c. They failed to paint or otherwise visually mark the edges of risers so as to make them more nearly visible; d. They failed to provide continuous handrails for use by persons using the exterior stairway; e. They failed to post warnings regarding the presence and configuration of the stairs." (Emphasis added.) The complaint contained no allegation that the city had some policy or directive in place regarding those duties with which it or its employees had failed to comply. Additionally, although it was not expressly relied on by the court, the affidavit of the city's claims and loss coordinator stated that the city had no such policy in place for the general maintenance and design of the stairway, and the plaintiff failed to offer an affidavit that would have tended to put that fact in dispute.

Moreover, the plaintiff's allegations all relate to whether the city's design and maintenance of the stairway were reasonable and proper under the circumstances. Determinations as to what is reasonable or proper under a particular set of circumstances necessarily involve the exercise of judgment and are, therefore, discretionary in nature. Id., 506–507. Accordingly, we conclude that the court was correct in concluding,

as a matter of law, that the complaint alleged that the city negligently failed to perform a discretionary duty.

The plaintiff further contends that if the general rule were that a municipality is never liable for injuries resulting from its failure to maintain premises it owns and operates, the legislature would have expressly provided as such in § 52-557n (b),[6] which sets out exceptions to a municipality's potential liability. Finally, she contends that those exceptions would be meaningless if the city's failure to maintain its property is always discretionary.

The plaintiff misconstrues the holding of the trial court. The court did not hold that a municipality could never be subject to premises liability. It merely held that the city was immune in the present case because *the plaintiff's complaint* failed to allege that the city negligently failed to perform a ministerial duty and that the plaintiff's claim did not fit within the identifiable person-imminent harm exception to the qualified immunity enjoyed by the city for the discretionary acts of its employees. The court also did not hold that a municipality's duty to maintain its property is always discretionary. The court simply held that a determination as to whether an act or omission is discretionary or ministerial turns on the facts alleged in the complaint, which we conclude is in accordance with the applicable case law. See *Evon* v. *Andrews*, supra, 211 Conn. 501; *Colon* v. *Board of Education*, supra, 60 Conn. App. 181–82. As we have previously noted, the court observed that the complaint also did not state that the city's employees were ordered to maintain the stairway in any particular manner and failed to do so.

For all of the foregoing reasons, we conclude that the court correctly determined that there was no genuine issue as to any material fact and that the defendant

---

[6] See footnote 3.

was entitled to judgment as a matter of law on its special defense of governmental immunity.

The judgment is affirmed.

In this opinion the other judges concurred.